UNITED STATES of America, Plaintiff–Appellee,

v.

Ruben GONZALES, Defendant–Appellant.

No. 91–10561.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1992.

Decided Nov. 4, 1992.

Jose H. Robles, Tucson, Ariz., for defendant-appellant.

John P. Leader, Asst. U.S. Atty., and Linda A. Akers, U.S. Atty., D.Ariz., Tucson, Ariz., for plaintiff-appellee.

Before: ALARCON, HALL and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Ruben Gonzales pleaded guilty conditionally to possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), reserving his claim that the evidence should have been suppressed. The only issue is whether the search of Gonzales's bags during a routine bus sweep violated the Fourth Amendment. The briefing focuses on how to apply the recent United States Supreme Court decision in *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The district court determined that the search was permissible, and we affirm.

## I. Facts.

On May 3, 1991, Border Patrol Agent Jeffrey Self boarded a bus in Nogales, Arizona, approximately 500–700 yards from the Mexican border. He was investigating immigration status, not narcotics. The bus stopped at a red light, the driver let Self on, and then the bus continued on its way while Self spoke with passengers. The bus driver allowed the border patrolman to enter the bus because the bus company and the border patrol had an agreement that the border patrol could enter the buses and check for undocumented aliens. Another border patrolman drove behind the bus, to pick Self up when he was done. If passengers refused to talk with Self, there was no established rule concerning what he was to do, but sometimes he took passengers off the bus if they seemed nervous and he thought they were illegal aliens.

When Self got to the top step, Gonzales jumped out of his seat, took a step toward the right as though toward a back door (there was none) or the bathroom, and then sat back down. Self, wearing a uniform and a holstered revolver, began at the back of the bus as he usually did, and asked Gonzales if he was a citizen (yes), where he was born (Arizona), and whether he had identification (no). Gonzales was sitting in such a manner as to cover two gym bags against the interior wall of the bus. Self asked Gonzales if they were his bags. Gonzales said no. Self asked if Gonzales would mind if he looked in the bags, and Gonzales said no. Self then looked in one of the gym bags and found a garbage bag full of marijuana. Self had never before encountered marijuana or narcotics on a bus, and had not been looking for it when he got on. After finding it, he called his partner on the radio, got the bus driver to stop, and he and his partner handcuffed Gonzales. Self found more marijuana in the other bags while his partner took Gonzales away.

None of the above facts were disputed. The judge denied the motion to suppress. He found that (1) Gonzales's denial of ownership of the bags amounted to a disclaimer of any expectation of privacy in them; (2) Gonzales consented to Self's opening the bags; (3) the border patrol agents had a right to board the bus and ask passengers about their immigration status and for permission to search their bags; and (4) under the circumstances a reasonable person would have understood that he or she could refuse to cooperate.

## II. The Standard of Review.

We review a district court's ruling on the lawfulness of a seizure de novo, and its findings of fact for clear error. *United States v. Johnson,* 903 F.2d 1219, 1221 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 520, 112 L.Ed.2d 531 (1990). Whether property has been abandoned within the meaning of the Fourth Amendment is an issue of fact reviewed for clear error. *United States v. Mendia,* 731 F.2d 1412, 1414 (9th Cir.), *cert. denied,* 469 U.S. 1035, 105 S.Ct. 509, 83 L.Ed.2d 399 (1984).

## III. The Interview.

We begin by considering whether the Constitution permitted the border patrol agent to speak with Gonzales as he did. Under *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), this was a permissible encounter, not a seizure.

The officer boarded the bus while it was stopped at a red light, pursuant to an agreement between the bus company and

the border patrol. His boarding implicates no constitutional rights of Gonzales's. It was not Gonzales's bus. The bus company could let other people on. The bus continued down the road after Self got on board. Instead of preventing everyone on the bus from going on their way, the border patrol used a following car to pick up Self when he was done. The boarding of the bus did not affect the ability of Gonzales and other passengers to ignore the officer and go about their business, which at the moment was to ride down the street.

█ The next step was for Self to initiate his conversation with Gonzales, to see whether he was an illegal alien. *Bostick* holds that police officers may, without articulable suspicion, approach passengers on buses and ask them questions, ask to see identification, and ask for consent to search baggage, "as long as the police do not convey a message that compliance with their requests is required." *Id.* ── U.S. at ──, 111 S.Ct. at 2386. The appropriate inquiry is not whether the passenger would feel free to leave, since a person seeking to travel somewhere on a bus does not ordinarily wish to leave the bus, but rather "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* ── U.S. at ──, 111 S.Ct. at 2387; *cf. United States v. $25,000 U.S. Currency,* 853 F.2d 1501, 1504-05 (9th Cir.1988). A court "must consider all the circumstances surrounding the encounter" to make this determination. *Bostick,* ── U.S. at ──, 111 S.Ct. at 2389.

█ *Bostick* does not hold that any inquiry or request to search a passenger's baggage in a routine bus sweep is permitted by the Constitution. *Bostick* rejects a per se rule allowing or disallowing inquiries in routine sweeps, and instead requires a particularized factual determination. Among the factors *Bostick* notes are whether the police specifically tell the passenger that consent may be refused and whether the police threaten the passenger with a gun. *Id.* ── U.S. at ──, 111 S.Ct. at 2385. The suspicionless encounter is consensual and not a seizure, if "a reason-able person would feel free 'to disregard the police and go about his business.'" *Id.* ── U.S. at ──, 111 S.Ct. at 2386. *Bostick* reaffirms the principles, established in airport cases, that police may ask questions of individuals, ask to see their identification, and request consent to search baggage, "as long as the police do not convey a message that compliance with their requests is required." *Id.* ── U.S. at ──, 111 S.Ct. at 2386. On a bus, consensuality is not tested by whether the passenger feels free to leave, because a passenger on a bus ordinarily would not want to leave. *Id.* ── U.S. at ──, 111 S.Ct. at 2387. That the inquiry takes place in the cramped confines of a bus is "one relevant factor." *Id.* ── U.S. at ──, 111 S.Ct. at 2389. The "appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* ── U.S. at ──, 111 S.Ct. at 2387. The "'reasonable person' test presupposes an *innocent* person," *id.* ── U.S. at ──, 111 S.Ct. at 2388, so the inquiry is not what a reasonable person carrying contraband would do in response to the inquiry.

In *Bostick,* the Supreme Court remanded so that the state court could evaluate the seizure question under the correct legal standard. *Id.* ── U.S. at ──, 111 S.Ct. at 2388. In the case before us, the district court did evaluate the question under the correct standard. The district judge made a finding of fact, after hearing the evidence, and having the *Bostick* case pointed out to him, that "under the circumstances a reasonable person would have understood that he or she could refuse to cooperate." The record affords no basis for treating this finding as "clearly erroneous." Although Gonzales was not advised of his right to terminate the interview, the agent was uniformed and armed, and it was not practical for Gonzales to leave the bus, nevertheless, unlike *Bostick,* a second officer did not block Gonzales from getting out of his seat and moving to another part of the bus or leaving. While the agent might have required Gonzales to get off the bus had Gonzales refused to respond to the questions, there is no evidence that Gon-

zales knew of that potential consequence or responded out of fear of it. Agent Self was a border patrolman asking questions which a citizen of the United States would ordinarily not hesitate to answer.

## IV. The Search.

The district court found both abandonment and consent with regard to the search of the bags, and neither finding was "clearly erroneous." Although Gonzales's location with respect to the bags suggested that they were his, nevertheless when asked, he denied that they were his, and said he had no objection to Agent Self looking inside. Self did not tell Gonzales that he had a right to refuse permission, but there was no reason for him to do so, since Gonzales said he did not own the bags at all.

The totality of circumstances, including denial of ownership by Gonzales, resulted in abandonment of the bags. *Cf. United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir.1986). Gonzales therefore lacked standing to object to a search of the bags, and a warrantless search and seizure did not violate Gonzales's Fourth Amendment rights. *United States v. Veatch*, 674 F.2d 1217, 1220–21 (9th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982).

Because we affirm the district court's finding that Gonzales abandoned the bags, we need not reach the district court's alternative finding that Gonzales consented to the search of the bags.

AFFIRMED.