21 F.3d 1118
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oscar SANTIAGO, Defendant-Appellant.
 No. 93-50553.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1994.*
Decided April 11, 1994.
 
 Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Oscar Santiago appeals his conviction following a conditional guilty plea to possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Santiago contends that the district court erred by denying his suppression motion because (1) he was illegally detained when a law enforcement officer questioned him in the airport, (2) he was illegally arrested when he was transported in handcuffs to a holding cell in the airport, and (3) his suitcase was illegally seized and searched. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 
 3
 * Background
 
 
 4
 Los Angeles Police Department (LAPD) Detective Patty May and Los Angeles Sheriff's Department Deputy Rob Irmas, both in plain clothes, observed Santiago outside the Los Angeles International Airport. Santiago appeared to be nervous and in a hurry and carried a briefcase and a new hard-sided suitcase, which is often used by couriers to transport cocaine. Santiago checked the suitcase with a skycap and was given a luggage identification tag, which Santiago did not complete. The skycap placed on the suitcase a "heavy tag," indicating that the bag was heavier than normal. Detective May knew that heavy bags were uncommon on domestic flights and such bags often contain drugs.
 
 
 5
 Santiago entered the airport and sat down at the boarding area inside the terminal. While Deputy Irmas remained about twenty feet away, Detective May sat next to Santiago, showed him her LAPD identification, and asked if she could talk to him. Detective May told him he was not under arrest and was free to leave. She asked if she could see his identification. Santiago produced a credit card, which he did not allow Detective May to see closely, and a Resident Alien Card, which he gave to Detective May. May then asked if she could see his ticket, which he gave to her after taking back his identification. The name on the ticket did not match the name on Santiago's identification. The ticket, purchased that day from a travel agent, was a one-way ticket to New York's John F. Kennedy Airport. In Detective May's experience New York is a common drug courier destination. Detective May also knew that people transporting drugs often travel under assumed names with one-way tickets purchased on the day of travel at a travel agency. Santiago explained that the names on his ticket and identification were different because his friend brought the ticket.
 
 
 6
 Detective May then told Santiago that she was a narcotics investigator and asked him if he was carrying any drugs. He said, "No," and revealed that he had been in Los Angeles a few days visiting friends. Detective May asked Santiago if he had checked any luggage. Santiago said that he had only the briefcase but later admitted that he had checked a bag with the skycap at the curb, when pressed by Detective May's questioning. He stated that the bag contained only clothes, a shirt, and a present for his girlfriend.
 
 
 7
 Detective May asked if she could search the bag and Santiago agreed. In response to May's request, and after some hesitation, Santiago produced the key to the bag. Deputy Irmas went to the skycap stand to try the key in the suitcase but discovered that the bag also had a combination lock. Santiago told Detective May a combination number that turned out to be incorrect.
 
 
 8
 At the skycap stand, Santiago tried to open the combination lock but failed. Detective May knew that drug couriers transporting narcotics in a container secured with a combination lock either do not know or do not divulge the combination when asked. May asked Santiago again if he had drugs in the suitcase. Santiago looked at his feet and said nothing, and when questioned again said, "Well, check it out." Santiago refused May's request to open the suitcase forcibly.
 
 
 9
 At this point, Detective May told Santiago he was being detained. May handcuffed Santiago and transported him and the suitcase by car to the Narcotics Task Force office in the airport. When they arrived at the office a few minutes later, Santiago's handcuffs were removed and he was placed in a holding cell. Detective May and other officers arranged to have a narcotics dog sniff the suitcase. The dog, indicating the presence of drugs, reacted positively to Santiago's suitcase. Detective May then told Santiago he was under arrest. Less than fifteen minutes had elapsed from when May told Santiago he was being detained. About five hours later, Detective May and other officers opened the suitcase pursuant to a search warrant and found eight packages of cocaine.
 
 
 10
 In denying the motion to suppress, the district court made alternative findings on all issues, including the findings that Santiago was not detained until Detective May told him he was being detained, and the detention and search of the suitcase was justified under the independent source doctrine.
 
 II
 Merits
 
 11
 We review for clear error the district court's factual findings. United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992). We review de novo "the ultimate determination of whether those facts amount to an unlawful seizure." United States v. Johnson 903 F.2d 1219, 1221 (9th Cir.), cert. denied, 498 U.S. 985 (1990); accord United States v. Gonzales, 979 F.2d 711, 712 (9th Cir.1992).
 
 
 12
 Santiago argues that he was seized at some point before Detective May told him he was being detained and that this detention was not supported by reasonable suspicion. Santiago also contends that, even if his detention was justified, that detention escalated into an illegal arrest which tainted the seizure of drugs from his suitcase.
 
 
 13
 A seizure does not occur simply because a law enforcement officer approaches a citizen in public and asks questions. See Florida v. Bostick, 111 S.Ct. 2382, 2386 (1991); Gonzales, 979 F.2d at 713. "So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." Bostick, 111 S.Ct. at 2386 (quoting California v. Hodari D., 111 S.Ct. 1547, 1551 (1991)). A person is seized under the fourth amendment under the totality of the circumstances only when, by means of physical force or a show of authority, his liberty is in some way restrained. Id.
 
 
 14
 A law enforcement officer may briefly detain a traveler's luggage based on a reasonable articulable suspicion that the luggage contains contraband. See United States v. Sokolow, 490 U.S. 1, 7 (1989); United States v. Place, 462 U.S. 696, 706 (1983); United States v. Mondello, 927 F.2d 1463, 1470 (9th Cir.1991). Whether a reasonable suspicion exists depends on the totality of the circumstances, including the officer's training and experience. Sokolow, 490 U.S. at 8; Mondello, 927 F.2d at 1470; United State v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989) (citing United States v. Cortez, 449 U.S. 411, 418 (1981)). The independent source doctrine permits the admission of evidence at trial where the evidence is discovered by means wholly independent of any constitutional violations. Nix v. Williams, 467 U.S. 431, 443 (1984).
 
 
 15
 Here, during the initial conversation at the boarding gate, Detective May did not indicate by physical force or show of authority that Santiago was restrained, and she told him he was free to leave. She questioned him alone and did not indicate that compliance with her requests was required. Santiago agreed to talk to Detective May, and agreed to accompany her to the skycap stand to attempt to open his suitcase.
 
 
 16
 The district court's finding that Detective May's questioning of Santiago was not a detention is consistent with precedent. See Bostick, 111 S.Ct. at 2386 (officers may, without reasonable suspicion, question a suspect, request identification, and ask for consent to search his possessions so long as they do not convey the message that compliance is required); United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989) (no seizure where officers approach defendant in public, do not display weapons, do not touch or restrain defendant, ask in non-threatening manner if they could speak to him, and tell him he is free to leave), cert. denied, 493 U.S. 1025 (1990). Santiago was first detained when Detective May told Santiago she was detaining him. Reasonable suspicion justified this detention in light of Santiago's nervousness and his contradictory and suspicious answers regarding his suitcase and airplane ticket. See Sokolow, 490 U.S. at 8-10 (reasonable suspicion established where nervous suspect travels under alias or takes evasive path through airport, fails to check luggage, pays cash for ticket, stays a brief time in Miami); Florida v. Royer, 460 U.S. 491, 493-94, 502 (1983) (detention justified where nervous suspect is carrying heavy suitcase, pays cash for a one-way ticket to New York under an alias, and fails to complete baggage identification tag).
 
 
 17
 With regard to Santiago's claim that his detention escalated into an arrest without probable cause, we need not address this issue because the facts justifying the detention of Santiago's suitcase were obtained before Santiago was handcuffed and were therefore independent of any possible illegalities. See Nix, 467 U.S. at 443 (independent source doctrine permits admission of evidence that has been discovered by means wholly independent of any constitutional violation).
 
 
 18
 Before Detective May handcuffed Santiago, she knew that he carried a new, heavy, hard-sided suitcase, failed to complete the bag tag, appeared nervous, and had a one-way ticket purchased that day to New York, a common drug courier destination. Further, his explanation for the discrepancy between the name on his ticket and on his identification was questionable, he initially lied about checking his suitcase, and he claimed the suitcase was his but did not know or would not divulge the lock combination. Finally, after claiming originally that he was not transporting drugs, Santiago later became evasive and equivocal about whether he was carrying drugs. The totality of facts, including Detective May's knowledge about drug courier behavior, supported a reasonable suspicion that Santiago's suitcase contained drugs, and justified a brief detention of the suitcase.[1] See Place, 462 U.S. at 706-07 (reasonable suspicion justifies a brief detention of luggage in order to subject it to dog sniff); accord Mondello, 927 F.2d at 1470. Because the facts supporting the detention and search of the suitcase were obtained from sources independent of the alleged illegal arrest, the evidence seized from the suitcase was admissible. See Nix, 467 U.S. at 443.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the officers were diligent and the total time that elapsed from detaining the suitcase to exposing it to the trained narcotics dog was less than fifteen minutes, the seizure was reasonable and the subsequent search was valid. See United States v. Place, 462 U.S. 696, 709-10 (1983); accord United States v. $191,910 in U.S. Currency, No. 92-15583, slip op. at 1839, 1854-55 (9th Cir. Feb. 18, 1994)