THE STATE OF NEVADA, APPELLANT, v. KENNETH OWEN BURKHOLDER, RESPONDENT.

No. 27386

May 1, 1996                                         915 P.2d 886

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Terrence P. McCarthy,* Deputy, Washoe County, for Appellant.

---

[2]In light of this court's disposition, we need not address Jones' remaining contentions.

*Michael R. Specchio,* Public Defender, and *John Reese Petty,* Chief Appellate Public Defender, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Officers Jeffrey Freelove ("Freelove") and William Abbott ("Abbott") approached respondent Kenneth Owen Burkholder ("Burkholder") on a public street and asked Burkholder if they could search him for weapons or illegal drugs. Burkholder

allowed the search, and Freelove found a brass smoking pipe with marijuana residue and a glass vial containing trace amounts of a light brown powdery substance. Burkholder was charged with using a controlled substance. Burkholder filed a motion to suppress evidence, alleging that Freelove conducted an unlawful search. The district court granted Burkholder's motion to suppress and dismissed the charge against Burkholder.

In this appeal, the State contends that the district court erred by determining that Freelove's search of Burkholder was unconstitutional and that the district court erred by dismissing the charge against Burkholder. For the reasons stated below, we conclude that the State's contentions are correct.

## FACTS

On May 20, 1995, Freelove and Abbott were conducting a "proactive drug recognition assignment" in Reno. Freelove observed Burkholder receiving multiple phone calls on a pay telephone. Freelove also saw Burkholder walk to the Carriage Inn and have a very brief conversation with a man who stood in the doorway of a room at the Carriage Inn. That specific room, and the man, were also being watched by police due to the high amount of foot traffic going to the room. After Burkholder's conversation with the man, Burkholder walked out of the Carriage Inn and returned to the pay telephone he was using earlier.

Based on Burkholder's phone calls, his nervous appearance, his trip to the Carriage Inn room and his conversation with the man, Freelove believed that Burkholder was buying or selling illegal drugs. Freelove approached Burkholder on the sidewalk near the pay telephone. Freelove was dressed in plainclothes, had his police badge hanging on a chain around his neck and told Burkholder that he was a police officer. Freelove asked Burkholder if he would answer a few questions. Burkholder replied "yes." Freelove asked Burkholder if he was carrying any weapons or drugs. Burkholder replied "no." Freelove then asked Burkholder if he could search him for weapons and drugs. Burkholder replied "yes."

Freelove searched Burkholder and found a small brass smoking pipe soiled with marijuana residue in Burkholder's front pants pocket. Freelove found a glass vial containing small amounts of a light brown powdery substance in Burkholder's inside jacket pocket. Freelove did not tell Burkholder that he was free to go, could decline to answer the police officer's questions or could decline the police officer's request to search his person.

After the search, Burkholder admitted to Freelove that he had used methamphetamine on the day before the search and mari-

juana three hours before the search. Freelove detected physical symptoms of recent use of a central nervous system stimulant, and Abbott conducted a drug recognition exam. Freelove and Abbott then arrested Burkholder for possession of drug paraphernalia and transported Burkholder to the Reno Police Department. At the station house, urine and blood samples were collected from Burkholder. The samples were analyzed to determine whether Burkholder was under the influence of illegal drugs at the time of his arrest.

On June 12, 1995, Burkholder was charged by information with using a controlled substance. Burkholder filed a motion to suppress all evidence linked to the laboratory tests on his urine and blood samples, alleging that Freelove's search was illegal. On August 16, 1995, the district court conducted a hearing on Burkholder's motion to suppress. The prosecutor argued that Freelove's search was legal based upon the holding in Florida v. Bostick, 501 U.S. 429 (1991). The district court ruled that Freelove's search of Burkholder was not based on probable cause. Accordingly, the district court granted the motion to suppress. Also, the district court dismissed the charge against Burkholder.

## DISCUSSION

### Constitutionality of the search

Pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, the "seizure" of a person without probable cause or a warrant is *"per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). As such, not all interactions between policemen and our citizenry involve the "seizure" of persons. Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

Mere police questioning does not constitute a seizure. *Bostick,* 501 U.S. at 434. The police may randomly—without probable cause or a reasonable suspicion—approach people in public places and ask for leave to search. *Id.* As stated by the United States Supreme Court in Florida v. Royer, 460 U.S. 491, 497 (1983):

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to

him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.

Accordingly, we conclude that the district court's focus on whether Burkholder's conduct gave Freelove sufficient suspicion to ask Burkholder questions was misplaced. Freelove was free to question Burkholder without violating Burkholder's Fourth Amendment rights.

The appropriate inquiry in this case is whether Burkholder's consent to be searched was given voluntarily. To establish a lawful search based on consent, the State must demonstrate that consent was voluntary and not the result of duress or coercion. Schneckloth v. Bustamonte, 412 U.S. 218, 248 (1973). Voluntariness is determined by ascertaining whether a reasonable person in the defendant's position, given the totality of the circumstances, would feel free to decline a police officer's request or otherwise terminate the encounter. *See Bostick,* 501 U.S. at 434. "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." Michigan v. Chesternut, 486 U.S. 567, 573 (1988).[1]

In this case, one officer approached Burkholder on a public street and had a very brief conversation with him before the search in question. The evidence does not indicate that Freelove blocked Burkholder's ability to proceed down the sidewalk. The officer identified himself as a police officer and showed his badge. However, the record does not indicate that Freelove physically touched Burkholder, displayed his weapon, used a commanding tone in his questions or threatened Burkholder. Accordingly, we conclude that Burkholder voluntarily consented to the search in question.

Burkholder contends that the fact he was not told that he could decline to answer Freelove's requests is crucial to this court's analysis of the voluntariness of Freelove's search. "[W]hile the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."

---

[1]"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry,* 392 U.S. at 19 n.16. Further, so long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual. California v. Hodari D., 499 U.S. 621, 628 (1991).

*Schneckloth,* 412 U.S. at 248-49. As such, numerous cases have held a consent voluntary even where the police did not inform the accused that they could refuse the police's requests. *See generally* United States v. Gonzales, 979 F.2d 711 (9th Cir. 1992); United States v. $25,000 United States Currency, 853 F.2d 1501 (9th Cir. 1988).

Accordingly, in light of the public location of Freelove's questioning and Freelove's non-coercive conduct toward Burkholder during the questioning, we conclude that Burkholder's consent to the search was voluntary. Therefore, the district court erred by granting Burkholder's motion to suppress.

*Dismissal of the charge against Burkholder*

On October 9, 1995, the district court issued an order dismissing the controlled substance charge against Burkholder. Apparently, however, Burkholder never filed a motion to dismiss. For that reason, the State argues that the district court's dismissal of the charge against Burkholder was improper. We agree.

The State has the right to decide whether to proceed to trial without evidence that is suppressed or move to dismiss the case. Until trial, the district court cannot know the full extent of the State's evidence against an accused because the State may not have presented all their evidence at the preliminary hearing. Also, despite a suppression order, other evidence presented at a preliminary hearing is still admissible at trial. The jury, not the district court, should be allowed to determine whether the State has sufficient evidence to prove a crime charged beyond a reasonable doubt.

In the case at bar, evidence that was not suppressed could have been used by the State to pursue the charge against Burkholder. The motion to suppress sought to exclude only the results of any laboratory tests on Burkholder's urine or blood. Freelove's and Abbott's observations and opinions of Burkholder, the drug recognition examination that was conducted on Burkholder, and Burkholder's admission that he used methamphetamine and marijuana prior to the incident in question may still be admissible.

Accordingly, we conclude that the district court improperly dismissed the charge against Burkholder.

## CONCLUSION

We conclude that the district court incorrectly ruled that Freelove's search of Burkholder was illegal. Also, we conclude that the district court acted outside its authority by dismissing the

charge against Burkholder. Therefore, we reverse the district court's orders which granted Burkholder's motion to suppress and which dismissed the charge against Burkholder, and we remand this case to the district court for further proceedings.