13 P.3d 947 (2000)
The STATE of Nevada, Appellant,
v.
Robert Henry LISENBEE, Respondent.
No. 32635.
Supreme Court of Nevada.
December 5, 2000.
*948 Frankie Sue Del Papa, Attorney General, Carson City; David Allison, District Attorney, and Conrad Hafen, Chief Deputy District Attorney, Humboldt County, for Appellant.
Jack T. Bullock II, Winnemucca, for Respondent.
BEFORE THE COURT EN BANC.

OPINION
LEAVITT, J.
The district court granted a motion to dismiss the State's case against respondent upon finding that two sheriff's deputies illegally seized respondent after he had produced proof of his identity.
The district court ruled the deputies did not have reasonable suspicion to detain respondent after he produced his identification, and all evidence subsequently discovered was illegally obtained and inadmissible. The State filed this timely appeal claiming the deputies were justified in detaining respondent and searching him for dangerous weapons. We reverse the district court's order dismissing the case, and remand for further proceedings.

FACTS
At two o'clock in the afternoon, two deputies from the Humboldt County Sheriff's office were searching for a particularly named burglary suspect. They observed respondent, Robert Henry Lisenbee, who resembled the description of the burglary suspect. They watched Lisenbee knock on a door of a home and look into the window of the residence. (It was later determined that the residents knew Lisenbee.) The deputies approached Lisenbee and asked for identification. Lisenbee produced a Colorado prison *949 identification card, and then voluntarily pulled up his tee shirt to reveal a small Spyderco knife (a lightweight legal knife) and a cellular phone that were both clipped to his belt.
One of the deputies reached over to grab the knife and attempted to hold Lisenbee's arm in order to perform a pat down search. A fight ensued. Lisenbee broke free and ran from the officers. He was tackled and brought to the ground by both officers, but he again escaped and continued in his attempt to flee. The deputies lost sight of him for a brief period of time. Eventually, Lisenbee was found lying on the ground with his arms outstretched, and then voluntarily submitted to police custody. Following Lisenbee's apprehension, the deputies retraced the path taken during the pursuit and discovered a large clear plastic baggie containing five smaller baggies of methamphetamine with a total weight of 21.7 grams.
Lisenbee was bound over to district court on a charge of trafficking in a controlled substance. However, Lisenbee's motion to dismiss was granted by the district court on the grounds that the deputies' actions in detaining Lisenbee, and grabbing for Lisenbee's knife, constituted an illegal seizure. Thus, the district court held that the controlled substance discovered after the seizure was illegally obtained and was therefore inadmissible. The State appeals.

DISCUSSION
This case involves an appeal from a district court's ruling on a motion to dismiss based on an illegal seizure. Fourth Amendment seizure issues, such as the one presented in this instance, often involve mixed questions of law and fact. See United States v. Stephens, 206 F.3d 914, 917 (9th Cir.2000). This court reviews findings of historical facts under the clearly erroneous standard, but the legal consequences of those facts are questions of law which we review de novo. See Hayes v. State, 106 Nev. 543, 550 n. 1, 797 P.2d 962, 966 n. 1 (1990).
In this instance, the district court found that the deputies were seeking a "consensual encounter" with Lisenbee, and once Lisenbee presented his identification card, the deputies had reason to know that he was not the suspected burglar. Therefore, the district court concluded that the detention should have ended at that instant, and any evidence found at a later point was illegally obtained and in violation of the Fourth Amendment.
The Fourth Amendment requires that the government respect "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. This restraint on conduct generally prohibits government officials from undertaking searches and seizures absent some individualized suspicion. See Chandler v. Miller, 520 U.S. 305, 308, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). However, the United States Supreme Court has stated that "mere police questioning does not constitute a seizure." Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Similarly, this court has held that "[t]he police may randomlywithout probable cause or a reasonable suspicion approach people in public places and ask for leave to search." State v. Burkholder, 112 Nev. 535, 538, 915 P.2d 886, 888 (1996).
In support of investigatory conduct by police officers, the United States Supreme Court held in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that a police officer may stop a person and conduct a brief investigation when the officer has a reasonable, articulable suspicion that criminal activity is taking place or is about to take place. The "reasonable, articulable suspicion" necessary for a Terry stop is more than an "inchoate and unparticularized suspicion or `hunch.'" Id. at 27, 88 S.Ct. 1868, Rather, there must be some objective justification for detaining a person. Thus, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id. at 22, 88 S.Ct. 1868
"[N]ot all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen *950 may we conclude that a `seizure' has occurred." Id. at 19 n. 16, 88 S.Ct. 1868.
The Nevada codification of Terry is found in NRS 171.123(1). The statute allows a police officer to "detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime." Secondarily, NRS 171.1232 permits the police to engage in a pat down of a suspect if there is reasonable suspicion to believe that the suspect is armed and dangerous. However, NRS 171.123(4) limits the detention of citizens to the amount of time that is reasonably necessary to effect the purpose of ascertaining the citizen's identity. If a stop is predicated on NRS 171.123, an officer may only perform the pat down for weapons if there is an underlying reasonable belief that the suspect possesses dangerous weapons and is a threat to safety. NRS 171.1232.
In reviewing police action in seizure cases such as this one, the touchstone of the Fourth Amendment analysis must always be that of reasonableness. See Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Reasonableness must be determined with an objective eye in light of the totality of the circumstances. See Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In this case, the district court found that the original encounter between law enforcement officers and Lisenbee was consensual. We agree.
According to Terry and NRS 171.123(1), an officer can justify a detention if he can articulate a reasonable suspicion that the citizen is about to or had committed a criminal act, or the officer has probable cause for arrest. However, we do not conclude that reasonable suspicion has been eroded to the point that merely matching a description, producing a prison card, and possessing a legal pocketknife and cellular phone rises to the level necessary for Lisenbee's detention.
When looking at the totality of the circumstances before us, we agree with the district court's finding that the officers only had a "hunch" that Lisenbee might be the burglary suspect they were seekingbut it was nothing more than a hunch. When Lisenbee produced identification indicating that he was not the person sought by the police, NRS 171.123(4) precluded the officers from detaining him. Further, Lisenbee voluntarily lifted up his shirt and exposed his cellular phone and pocketknife as an indication that he was not armed and dangerous. This voluntary exposure eliminated the officers' fears that Lisenbee was a safety risk based on any possession of dangerous weapons. Furthermore, the small Spyderco knife is not considered a dangerous weapon under NRS 202.350. Therefore, under the purview of NRS 171.1232, no pat down would have been permissible since the officers lacked reasonable suspicion that he was armed and dangerous. Additionally, Lisenbee was not in an area known for criminal activity. Nor does his peering into a window and knocking on a door during daylight hours amount to suspicious conduct. Accordingly, we conclude that Lisenbee's detention by the police was not reasonable.
Unreasonable detention equates to an unlawful seizure. See State v. Ramos, 93 Hawai`i 502, 6 P.3d 374, 383 (Haw.Ct.App. 2000). This court has held that a person is seized if, in view of all the circumstances surrounding the incident, a reasonable person would believe that he was not free to leave. See State v. Stinnett, 104 Nev. 398, 401, 760 P.2d 124, 127 (1988) (citing United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)).
Applying the Stinnett test to the facts in this case it is evident that Lisenbee was not free to leave. After answering the officer's questions and indicating that he was unarmed, the officers tackled Lisenbee when he refused to allow them to hold him in their search for weapons. As he escaped and began to run, he was tackled again. A reasonable person in Lisenbee's position would not have thought he was free to unilaterally terminate the encounter with the police. Additionally, this show of force by the police restrained Lisenbee's liberty to depart. Regardless of whether or not Lisenbee was physically subdued during the incident, it is our conclusion that he was not "free to leave" as is required by Stinnett.
*951 This court has held that "once an individual is `seized,' no subsequent events or circumstances can retroactively justify the `seizure."' Id. at 401, 760 P.2d at 127, Therefore, this court sees no merit in the argument that Lisenbee's flight from the deputies provided a reasonable suspicion of criminal activity. Lisenbee's flight occurred after his original submission to police authority, and after the police determined that he was not the suspected burglar they sought.
However, it must be noted that Lisenbee's flight took place after he was initially seized by policeand not before. The United States Supreme Court has held that "[a] seizure is a single act, and not a continuous fact." California v. Hodari, 499 U.S. 621, 625, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (citing Thompson v. Whitman, 18 Wall. 457, 471, 21 L.Ed. 897 (1873)). Therefore, we must conclude that flight after a seizure occurs is an effectual end to that seizure. Thus, any conduct during flight should be considered apart from the illegal police action.
In this instance, Lisenbee was no longer seized when he broke free from the officers and began to run. It is the State's contention that Lisenbee discarded a controlled substance during this flight. Although the district court was correct in ascertaining that the initial seizure was unlawful, the district court erred when concluding that any evidence seized from Lisenbee's flight was fruit of a poisonous tree.
Voluntarily abandoned property is not subject to Fourth Amendment protections. See Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). Therefore, "[a] person who voluntarily abandons his property has no standing to object to its search or seizure because he `loses a legitimate expectation of privacy in the property and thereby disclaims any concern about whether the property or its contents remain private.'" State v. Taylor, 114 Nev. 1071, 1077-78, 968 P.2d 315, 320 (1998) (citation omitted). Based on these facts, we conclude that any evidence found as a result of Lisenbee's flight was not obtained in violation of the Fourth Amendment.
Further, we must note as well that there is public policy that supports courts of law determining the lawfulness of seizures or arrests rather than by the subjective intent of criminals on the streets. Pursuant to NRS 199.280, it is a misdemeanor to resist, delay or obstruct a public officer in discharging or attempting to discharge any legal duty of his office. Although we conclude that district court was correct in ruling the police seizure in this instance was illegal, Lisenbee's flight from the officers was unjustified and contra to our public policy. Lisenbee was not "facing imminent and serious bodily harm at the hands of the police officer." See Batson v. State, 113 Nev. 669, 676 n. 3, 941 P.2d 478, 480 n. 3 (1997). By allowing a suspect to break free from the police after seizure, as occurred here, and then to allow the suspect to cling to Fourth Amendment protections, would be akin to this court condoning flight from the scene. This we refuse to do.

CONCLUSION
There is substantial evidence to support the district court's ruling that the sheriff's deputies did not have reasonable suspicion to detain Lisenbee after he had given the police proper identification. The subsequent action of physically restraining Lisenbee was an illegal seizure. However, because Lisenbee terminated the seizure by breaking free from the officers' control, he cannot now complain of any violation of Fourth Amendment rights in contraband found by the police during a subsequent sweep of the area. Accordingly, that evidence should not be deemed fruit of a poisonous tree, and is admissible in a subsequent proceeding.
Based on the foregoing, we reverse the district court's order dismissing the case, and remand for further proceedings.
AGOSTI and BECKER, JJ., concur.
MAUPIN, J., with whom SHEARING, J., agrees, concurring.
I concur with the decision of the majority that the contraband in this case was abandoned and that Lisenbee had no standing to *952 argue that it was seized in violation of his rights under the Fourth Amendment to the Federal Constitution.[1]
However, I believe the majority puts too fine a point on its determination that, at some point, Lisenbee was the victim of an unlawful seizure of his person in violation of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and NRS 171.123.[2]
The district court found that the sheriff's deputies had no reasonable basis for believing that a crime was committed or about to be committed. Therefore, the district court concluded that the deputies had no justification for detaining Lisenbee after he showed them the prison identification card. I would, respectfully, take issue with this conclusion. There was evidence in the record that (1) the deputies had witnessed Lisenbee's suspicious behavior near a residence, (2) they were looking for a burglary suspect who matched Lisenbee's description and who was last seen in the same area, (3) they had not previously seen an identification card like the one carried by Lisenbee and wanted to confirm its validity, and (4) for their own safety, while they were conducting the check of the identification, they attempted to seize the knife and wished to make sure that Lisenbee had no other weapons.
In my view, the deputies were within their rights to confront Lisenbee and inquire as to his identity and purpose in the neighborhood in which their interaction occurred. When Lisenbee lifted his shirt and revealed the presence of the knife on his person, he confirmed that he was armed. The majority concludes that his act of revealing the knife demonstrated that he was not armed (and dangerous). In fact, he was armed. His actions confirming this fact obviate the necessity of reaching the propriety of a "pat down" or "frisk" in this matter. The officers had already determined Lisenbee's status as an "armed" individual.[3]
Going further, it was not unreasonable for the officers to temporarily disarm Lisenbee until satisfied that he was not the person whom they were seeking. It was also not unreasonable for the officers to seek confirmation of the validity of a "prison identification card." His resistance to this process did violate NRS 199.280 and, because no excessive force was used by these officers, he was not at liberty to resort to any force in response. In short, no person has the right to resist legal or illegal detention by police officials absent a felonious application of force by the officer. See Batson v. State, 113 Nev. 669, 676 n. 3, 941 P.2d 478, 480 n. 3 (1997), in which we observed in the margin:
In State v. Smithson, 54 Nev. 417, 428, 19 P.2d 631, 634-35 (1933) (quoting Adams v. State, 175 Ala. 8, 57 So. 591, 592 (1912)), this court set forth a standard of self-defense against a police officer:
"The citizen may resist an attempt to arrest him which is simply illegal, to a limited extent, not involving any serious injury to the officer. He is not authorized to slay the officer, except in self-defense; that is when the force used against him is felonious, as distinguished from forcible."
(Emphasis added.) ... We conclude that the language of Smithson describes the right to defend oneself or act in defense of another against police officers too broadly. Accordingly, Smithson is overruled to the *953 extent that it justifies the use of any force in response to anything less than a police officer's use of unlawful and excessive force. (Emphasis added.)
I therefore agree that the district court's decision should be reversed and the case remanded for further proceedings.
SHEARING, J., concurs.
YOUNG, J., with whom ROSE, C.J., agrees, dissenting.
I agree with the majority that the first encounter was consensual and that the detention and attempted seizure of Lisenbee's person was unlawful under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, I depart from the majority's conclusion that Lisenbee lacks standing to object to the seizure of the contraband. I also disagree with the majority's determination that it was improper for Lisenbee to break away from the police officers.
Lisenbee was observed, during daylight hours, in an open and exposed area not reputed for criminal activity. He was seen first knocking on the door and then peering in the window of an acquaintance's residence. Lisenbee initially observed the officers exit a marked police car and approach him from a distance of approximately thirty feet. Instead of fleeing from and attempting to evade the approaching officers, Lisenbee waved to and willingly spoke with them. He did not make any suspicious movements or gestures. Lisenbee gave the officers his correct name and provided exculpating identification. Lisenbee then voluntarily lifted his shirt, displaying his waist area, and revealed a legal pocketknife. The meeting between Lisenbee and the two officers was voluntary and consensual in nature, implicating no Fourth Amendment interest.
However, Fourth Amendment scrutiny is triggered the moment an encounter between a police officer and a person "loses its consensual nature." Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). A person is seized, within the meaning of the Fourth Amendment, if, in view of all the circumstances surrounding the incident, a reasonable person would not believe that he was free to leave. State v. Stinnett, 104 Nev. 398, 401, 760 P.2d 124, 127 (1988).
The consensual aspect of this encounter disappeared the moment Lisenbee's arm was grabbed by one of the officers and Lisenbee refused to submit to a more invasive search. Under such restraint, Lisenbee would not "feel free to leave" and walk away and, for Fourth Amendment purposes, Lisenbee was then "seized" by the officers.
Terry and its progeny instruct that law enforcement officers may seize and search individuals based on a reasonable suspicion of criminal activity derived from "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21-22, 88 S.Ct. 1868. The detaining officers "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). The officers in this case unlawfully invaded Lisenbee's sanctity.
Although he may have, in some way not articulated, fit the vague description of the burglary suspect, any suspicion that Lisenbee was the sought-after burglar was dispelled the instant he provided the officers with identification. Even if Lisenbee had no identification on his person, the officers had no basis to continue detaining him. Lisenbee should have been free to leave because the rationale for stopping him had dissipated and the evidence indicated, using the Terry standard, that the officers lacked the necessary reasonable suspicion to justify his continued detention.
A police officer who has stopped someone because of suspected criminal activity may conduct a search of the person for weapons if the officer reasonably suspects that the person is dangerous. Terry, 392 U.S. at 30, 88 S.Ct. 1868; see NRS 171.1232. "Terry requires reasonable, individualized suspicion [that a suspect is armed] before a frisk for weapons can be conducted." Maryland v. Buie, 494 U.S. 325, 334 n. 2, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The evidence in this *954 case never suggested or indicated that Lisenbee posed a danger to the officers' safety.
Lisenbee's conduct was not threatening. The evidence did not suggest that he was carrying a concealed weapon. I cannot assume on these facts that Lisenbee posed a threat to the officers because he carried a legal pocketknife. The attempted frisk after he voluntarily exhibited the knife was illegal and the officers should have released him. If we conclude that the officers acted reasonably in this instance, this court would be concluding that officers have the requisite reasonable suspicion to frisk a person in rural Nevada when the person voluntarily shows he is carrying a legal pocketknife.
Further, in United States v. Burton, 228 F.3d 524 (4th Cir., 2000), a police officer did not maintain a sufficient basis to suspect that the defendant, who refused to provide identification, answer any questions, or comply with repeated requests to remove his hand from his coat pocket, was engaged in criminal activity. The officer testified that the defendant's inaction made him feel "uneasy about [his] safety" and thought that the defendant "possibly had a weapon in his pocket." Id. at 526. However, the court concluded that the officer's "reaching inside [defendant's] coat was an unlawful search ... and the handgun discovered must therefore be suppressed" because the officer did not initially have sufficient reasonable suspicion, under Terry, that criminal activity was afoot. Id. at 529. Here, Lisenbee gave a significantly lesser impression that he was involved in criminal activity and posed a considerably smaller threat to the officers' safety than the defendant in Burton.
In light of the evidence, I question whether it was improper for Lisenbee to break away and attempt to preserve his freedom. According to the majority, Lisenbee's flight from the police ended the unlawful seizure and his subsequent "conduct during flight should be considered apart from the illegal police action." If Lisenbee had attempted to slowly walk away, would the officers still be acting lawfully in seizing him? This was not at a crime scene. The officers had no "particularized and objective basis" for further detention.
Here, the police misconduct was infected with sufficient infirmities to render Lisenbee's abandonment of the contraband involuntary. Abandonment of property in response to police investigation does not, per se, render abandonment involuntary. See United States v. Veatch, 674 F.2d 1217, 1221 n. 5 (9th Cir.1981) (citing United States v. Colbert, 474 F.2d 174, 176 (5th Cir.1973)). There must be a nexus between the allegedly unlawful police conduct and abandonment of property if the challenged evidence is to be suppressed. United States v. Haddad, 558 F.2d 968, 975 n. 6 (9th Cir.1977). Lisenbee's actions were triggered by the original illegal intrusion, and the contraband evidence is thus inadmissible as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The abandonment of the contraband was not an act of free will on Lisenbee's part sufficient to purge the taint of his initial stop and the attempted pat down as suggested by the majority. The contraband was involuntarily abandoned as a product and direct consequence of the illegal seizure. It would be absurd to view Lisenbee's act of abandonment as coincidental; his actions were foreseeable and predictable. The majority appears to have overlooked the wealth of authority indicating that contraband abandoned during flight is inadmissible if it is the product of a prior illegal search or seizure. See United States v. Beck, 602 F.2d 726, 729-30 (5th Cir.1979) (concluding that "[w]hile it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest [citation omitted], it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct"); United States v. Gilman, 684 F.2d 616, 620 (9th Cir.1982) (concluding that "a loss of standing to challenge a search cannot be brought about by unlawful police conduct" [citation omitted] ); State of New Jersey v. Tucker, 136 N.J. 158, 642 A.2d 401, 409 (1994) (holding that because "there was an unreasonable seizure ... the goods were not abandoned"); Smith v. Commonwealth of Virginia, 12 Va.App. 1100, 407 S.E.2d 49, 52 (1991) (holding that "since the search of *955 the defendant was not justified by the circumstances, the discovery of the cocaine was the product of an illegal search and, therefore, inadmissible into evidence").
The district court's order suppressing the evidence should be affirmed. To admit the contraband into evidence would likely encourage similar Fourth Amendment violations in the future. Therefore, I respectfully dissent.
ROSE, C.J., concurs.
NOTES
[1] Thus, I agree with the majority that the seizure of Lisenbee's person terminated before his abandonment of the contraband.
[2] NRS 171.123 states in part:

1. Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime.
. . . .
3. The officer may detain the person pursuant to this section only to ascertain his identity and the suspicious circumstances surrounding his presence abroad. Any person so detained shall identify himself, but may not be compelled to answer any other inquiry of any peace officer.
4. A person must not be detained longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60 minutes. The detention must not extend beyond the place or the immediate vicinity of the place where the detention was first effected, unless the person is arrested.
[3] That his knife was legal to carry does not alter Lisenbee's status as an armed individual that could present a danger to the officers.