THE STATE OF NEVADA, Appellant, *v.* PATRICK FITZGERALD STINNETT, Respondent.

No. 18386

August 25, 1988

760 P.2d 124

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *George Assad,* Deputy District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Appellant.

*Morgan D. Harris,* Public Defender, and *George Franzen,* Deputy Public Defender, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Patrick Stinnett was arrested and charged with possession of a controlled substance with intent to sell (NRS 453.337). Following the preliminary hearing, Stinnett moved to suppress evidence and petitioned for a writ of habeas corpus. Each was granted. We reverse and remand for further proceedings.

On April 29, 1987, at 5:00 p.m., Officer Kallas of LVMPD and his partner were cruising in their unmarked patrol car near 1932 Carver Street in Las Vegas. Officer Kallas, a seven year veteran of the police department, stated that during the three and a half years he had patrolled that area, the dominant crime problem had been the sale and use of narcotics.

As the officers approached the intersection of Comstock and Carver Streets and began to turn west onto Carver Street, Officer Kallas observed three to four men huddled in front of 1932 Carver, an abandoned, boarded-up residence. The activity of these men, stated Officer Kallas, was consistent with street sales of narcotics.

The officers were continuing to drive west on Carver Street when one of the men in the group, who was black and wearing a blue, long-sleeved shirt, fled toward the back of the residence. After the man ran, Officer Kallas got out of the car and ran around the block in an attempt to locate the man who had fled. Not finding the individual on the street, Officer Kallas climbed

the fence behind the abandoned residence. His partner, meanwhile, parked in front of the home.

Officer Kallas noticed that the rear entrance to the boarded-up residence had been opened, and after retrieving a flashlight from the patrol car, he entered the building. He directed anybody in the residence to come out, but there was no response. Searching the building, he shined his light into a bedroom closet and saw Stinnett huddled in a corner.

Officer Kallas recognized Stinnett, who is black and was wearing a blue, long-sleeved shirt. He had arrested Stinnett before on drug related charges, and Stinnett had resisted his previous arrests. With this background in mind, Officer Kallas ordered Stinnett to stand, turn around, and put his hands behind his back. Stinnett replied, "Kallas, let me talk to you for a minute." To which Officer Kallas responded, "No, turn around and put your hands behind your back. And after I handcuff you, we will go outside and we can talk."

Stinnett's reaction was to resist the detention. He attempted to hit Officer Kallas, and the two men struggled. Stinnett escaped to the backyard where he was handcuffed. He was then placed in the patrol car.

Officer Kallas returned to the abandoned residence and found two plastic bags containing 17 rocks of cocaine (3.56 grams) on the closet shelf directly above where Stinnett had been hiding. Officer Kallas returned to the patrol car and informed Stinnett of his *Miranda* rights, whereupon Stinnett said, "Kallas, I will give you a dope house and make a buy for you if you will let me go. I can't afford this on my record."

The district court concluded that Officer Kallas illegally detained Stinnett without a reasonable suspicion that criminal activity was afoot. Based upon this determination, the cocaine and Stinnett's statements were suppressed. In the absence of the suppressed evidence, the petition for writ of habeas corpus was granted.

In Michigan v. Chesternut, ...... U.S. ......, 108 S.Ct. 1975 (1988), the court considered the implication of the Fourth Amendment to the police officer's pursuit of Chesternut. The police officers were on routine patrol in a marked car. Approaching an intersection, the officers observed another car pull to the curb. "A man got out of the car and approached . . . Chesternut, who was standing alone on the corner." Chesternut, seeing the patrol car, ran. The officers accelerated "to see where he was going." As the officers cruised alongside, Chesternut dropped several packets. One of the officers examined the packets and, based upon his experience as a paramedic, believed that the pills in the packets contained codeine. Chesternut, who was only a few

yards away, was then arrested for possession of narcotics. *Chesternut,* ...... U.S. at ......, 108 S.Ct. at 1977.

Initially we note that the concurring opinion concluded that an unprovoked flight provides sufficient cause to justify an investigative stop, and absent hot pursuit, "neither 'chase' nor 'investigative pursuit' need be included in the lexicon of the Fourth Amendment." *Chesternut,* ...... U.S. at ......, 108 S.Ct. at 1981 (Kennedy, J., concurring). We agree.

Insofar as Stinnett's flight was unprovoked, this case is indistinguishable from *Chesternut,* and the actions of the police officers were justified. We point out, however, that the actions of the police in this case were not justified by Stinnett's unprovoked flight alone; however, the determination of which additional circumstances may have justified the actions of the police depends upon when the "seizure" occurred. Obviously, once an individual is "seized," no subsequent events or circumstances can retroactively justify the "seizure."

The Supreme Court has clearly set forth and embraced the test to be applied in determining whether a "seizure" has occurred. "The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Chesternut,* ...... U.S. at ......, 108 S.Ct. at 1979 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

The *Chesternut* court concluded that a reasonable person would have concluded that he was free to leave when the patrol car quickly caught up with and cruised alongside Chesternut. *Chesternut,* ...... U.S. at ......, 108 S.Ct. at 1980. Clearly, Stinnett was not seized when Officer Kallas got out of the patrol car and ran around the corner to see where the fleeing man had gone. Stinnett fled prior to Officer Kallas' pursuit and then hid within the abandoned building. There is no indicia in the record that Stinnett was actually *aware* that Officer Kallas had followed him. Thus, a reasonable person could not have *perceived* a restraint upon his liberty until he was confronted in the closet of the abandoned building, at which point Stinnett, using physical force, attempted to flee again.

We hold that the circumstances leading up to the detention in the abandoned residence created a reasonable indication that criminal activity was afoot.[1] The men were in a neighborhood

---

[1] NRS 171.123(1) provides:

1. Any peace officer may detain any person whom the officer

that was known for drug related activity. They were huddled together in a suspicious manner in front of an abandoned residence. Upon seeing the patrol car, one of the men fled without provocation toward the rear of the abandoned residence. The residence, which was otherwise boarded-up, was open at the rear entrance. The officer found Stinnett hiding, huddled in a dark closet, and he recognized Stinnett, whom he had arrested before for drug related offenses.

We are satisfied that the actions of the police were justified. We, therefore, hold that the district court erred in suppressing the evidence and in granting Stinnett's petition for writ of habeas corpus. Accordingly, we reverse and remand for further proceedings.

encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime.