OPINION
By the Court,
Leavitt, J.:
The district court granted a motion to dismiss the State’s case against respondent upon finding that two sheriff’s deputies illegally seized respondent after he had produced proof of his identity.
The district court ruled the deputies did not have reasonable suspicion to detain respondent after he produced his identification, and all evidence subsequently discovered was illegally obtained and inadmissible. The State filed this timely appeal claiming the deputies were justified in detaining respondent and searching him for dangerous weapons. We reverse the district court’s order dismissing the case, and remand for further proceedings.

FACTS

At two o’clock in the afternoon, two deputies from the Humboldt County Sheriff’s office were searching for a particularly named burglary suspect. They observed respondent, Robert Henry Lisenbee, who resembled the description of the burglary suspect. They watched Lisenbee knock on a door of a home and look into the window of the residence. (It was later determined that the residents knew Lisenbee.) The deputies approached Lisenbee and asked for identification. Lisenbee produced a Colorado prison identification card, and then voluntarily pulled up his tee shirt to reveal a small Spyderco knife (a lightweight legal knife) and a cellular phone that were both clipped to his belt.
One of the deputies reached over to grab the knife and attempted to hold Lisenbee’s arm in order to perform a pat down search. A fight ensued. Lisenbee broke free and ran from the officers. He was tackled and brought to the ground by both officers, but he again escaped and continued in his attempt to flee. The deputies lost sight of him for a brief period of time. Eventually, Lisenbee was found lying on the ground with his arms outstretched, and then voluntarily submitted to police custody. Following Lisenbee’s apprehension, the deputies retraced the path taken during the pursuit and discovered a large clear plastic baggie containing five smaller baggies of methamphetamine with a total weight of 21.7 grams.
Lisenbee was bound over to district court on a charge of trafficking in a controlled substance. However, Lisenbee’s motion to *1127 dismiss was granted by the district court on the grounds that the deputies’ actions in detaining Lisenbee, and grabbing for Lisenbee’s knife, constituted an illegal seizure. Thus, the district court held that the controlled substance discovered after the seizure was illegally obtained and was therefore inadmissible. The State appeals.

DISCUSSION

This case involves an appeal from a district court’s ruling on a motion to dismiss based on an illegal seizure. Fourth Amendment seizure issues, such as the one presented in this instance, often involve mixed questions of law and fact. See United States v. Stephens, 206 F.3d 914, 917 (9th Cir. 2000). This court reviews findings of historical facts under the clearly erroneous standard, but the legal consequences of those facts are questions of law which we review de novo. See Hayes v. State, 106 Nev. 543, 550 n.1, 797 P.2d 962, 966 n.1 (1990).
In this instance, the district court found that the deputies were seeking a “consensual encounter” with Lisenbee, and once Lisenbee presented his identification card, the deputies had reason to know that he was not the suspected burglar. Therefore, the district court concluded that the detention should have ended at that instant, and any evidence found at a later point was illegally obtained and in violation of the Fourth Amendment.
The Fourth Amendment requires that the government respect “[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures.” U.S. Const. amend. IV. This restraint on conduct generally prohibits government officials from undertaking searches and seizures absent some individualized suspicion. See Chandler v. Miller, 520 U.S. 305, 308 (1997). However, the United States Supreme Court has stated that “mere police questioning does not constitute a seizure.” Florida v. Bostick, 501 U.S. 429, 434 (1991). Similarly, this court has held that “[t]he police may randomly — without probable cause or a reasonable suspicion — approach people in public places and ask for leave to search.” State v. Burkholder, 112 Nev. 535, 538, 915 P.2d 886, 888 (1996).
In support of investigatory conduct by police officers, the United States Supreme Court held in Terry v. Ohio, 392 U.S. 1 (1968), that a police officer may stop a person and conduct a brief investigation when the officer has a reasonable, articulable suspicion that criminal activity is taking place or is about to take place. *1128 The “reasonable, articulable suspicion” necessary for a Terry stop is more than an “inchoate and unparticularized suspicion or ‘hunch.’ ” Id. at 27. Rather, there must be some objective justification for detaining a person. Thus, “a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.” Id. at 22.
“[N]ot all personal intercourse between policemen and citizens involves ‘seizures’ of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a ‘seizure’ has occurred.” Id. at 19 n.16.
The Nevada codification of Terry is found in NRS 171.123(1). The statute allows a police officer to “detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime.” Secondarily, NRS 171.1232 permits the police to engage in a pat down of a suspect if there is reasonable suspicion to believe that the suspect is armed and dangerous. However, NRS 171.123(4) limits the detention of citizens to the amount of time that is reasonably necessary to effect the purpose of ascertaining the citizen’s identity. If a stop is predicated on NRS 171.123, an officer may only perform the pat down for weapons if there is an underlying reasonable belief that the suspect possesses dangerous weapons and is a threat to safety. NRS 171.1232.
In reviewing police action in seizure cases such as this one, the touchstone of the Fourth Amendment analysis must always be that of reasonableness. See Florida v. Jimeno, 500 U.S. 248, 250 (1991). Reasonableness must be determined with an objective eye in light of the totality of the circumstances. See Alabama v. White, 496 U.S. 325 (1990). In this case, the district court found that the original encounter between law enforcement officers and Lisenbee was consensual. We agree.
According to Terry and NRS 171.123(1), an officer can justify a detention if he can articulate a reasonable suspicion that the citizen is about to or had committed a criminal act, or the officer has probable cause for arrest. However, we do not conclude that reasonable suspicion has been eroded to the point that merely matching a description, producing a prison card, and possessing a legal pocketknife and cellular phone rises to the level necessary for Lisenbee’s detention.
*1129 When looking at the totality of the circumstances before us, we agree with the district court’s finding that the officers only had a “hunch” that Lisenbee might be the burglary suspect they were seeking — but it was nothing more than a hunch. When Lisenbee produced identification indicating that he was not the person sought by the police, NRS 171.123(4) precluded the officers from detaining him. Further, Lisenbee voluntarily lifted up his shirt and exposed his cellular phone and pocketknife as an indication that he was not armed and dangerous. This voluntary exposure eliminated the officers’ fears that Lisenbee was a safety risk based on any possession of dangerous weapons. Furthermore, the small Spyderco knife is not considered a dangerous weapon under NRS 202.350. Therefore, under the purview of NRS 171.1232, no pat down would have been permissible since the officers lacked reasonable suspicion that he was armed and dangerous. Additionally, Lisenbee was not in an area known for criminal activity. Nor does his peering into a window and knocking on a door during daylight hours amount to suspicious conduct. Accordingly, we conclude that Lisenbee’s detention by the police was not reasonable.
Unreasonable detention equates to an unlawful seizure. See State v. Ramos, 6 P.3d 374, 383 (Haw. Ct. App. 2000). This court has held that a person is seized if, in view of all the circumstances surrounding the incident, a reasonable person would believe that he was not free to leave. See State v. Stinnett, 104 Nev. 398, 401, 760 P.2d 124, 127 (1988) (citing United States v. Mendenhall, 446 U.S. 544 (1980)).
Applying the Stinnett test to the facts in this case it is evident that Lisenbee was not free to leave. After answering the officers’ questions and indicating that he was unarmed, the officers tackled Lisenbee when he refused to allow them to hold him in their search for weapons. As he escaped and began to run, he was tackled again. A reasonable person in Lisenbee’s position would not have thought he was free to unilaterally terminate the encounter with the police. Additionally, this show of force by the police restrained Lisenbee’s liberty to depart. Regardless of whether or not Lisenbee was physically subdued during the incident, it is our conclusion that he was not “free to leave” as is required by Stinnett.
This court has held that “once an individual is ‘seized,’ no subsequent events or circumstances can retroactively justify the ‘seizure.’ ” Id. at 401, 760 P.2d at 127. Therefore, this court sees no merit in the argument that Lisenbee’s flight from the deputies *1130 provided a reasonable suspicion of criminal activity. Lisenbee’s flight occurred after his original submission to police authority, and after the police determined that he was not the suspected burglar they sought.
However, it must be noted that Lisenbee’s flight took place after he was initially seized by police — and not before. The United States Supreme Court has held that “[a] seizure is a single act, and not a continuous fact.” California v. Hodari, 499 U.S. 621, 625 (1991) (citing Thompson v. Whitman, 18 Wall. 457, 471 (1873)). Therefore, we must conclude that flight after a seizure occurs is an effectual end to that seizure. Thus, any conduct during flight should be considered apart from the illegal police action.
In this instance, Lisenbee was no longer seized when he broke free from the officers and began to run. It is the State’s contention that Lisenbee discarded a controlled substance during this flight. Although the district court was correct in ascertaining that the initial seizure was unlawful, the district court erred when concluding that any evidence seized from Lisenbee’s flight was fruit of a poisonous tree.
Voluntarily abandoned property is not subject to Fourth Amendment protections. See Abel v. United States, 362 U.S. 217, 241 (1960). Therefore, “[a] person who voluntarily abandons his property has no standing to object to its search or seizure because he ‘loses a legitimate expectation of privacy in the property and thereby disclaims any concern about whether the property or its contents remain private.’ ” State v. Taylor, 114 Nev. 1071, 1077-78, 968 P.2d 315, 320 (1998) (citation omitted). Based on these facts, we conclude that any evidence found as a result of Lisenbee’s flight was not obtained in violation of the Fourth Amendment.
Further, we must note as well that there is public policy that supports courts of law determining the lawfulness of seizures or arrests rather than by the subjective intent of criminals on the streets. Pursuant to NRS 199.280, it is a misdemeanor to resist, delay or obstruct a public officer in discharging or attempting to discharge any legal duty of his office. Although we conclude that the district court was correct in ruling the police seizure in this instance was illegal, Lisenbee’s flight from the officers was unjustified and contra to our public policy. Lisenbee was not “facing imminent and serious bodily harm at the hands of the police officer.” See Batson v. State, 113 Nev. 669, 676 n.3, 941 P.2d 478, *1131 480 n.3 (1997). By allowing a suspect to break free from the police after seizure, as occurred here, and then to allow the suspect to cling to Fourth Amendment protections, would be akin to this court condoning flight from the scene. This we refuse to do.

CONCLUSION

There is substantial evidence to support the district court’s ruling that the sheriff’s deputies did not have reasonable suspicion to detain Lisenbee after he had given the police proper identification. The subsequent action of physically restraining Lisenbee was an illegal seizure. However, because Lisenbee terminated the seizure by breaking free from the officers’ control, he cannot now complain of any violation of Fourth Amendment rights in contraband found by the police during a subsequent sweep of the area. Accordingly, that evidence should not be deemed fruit of a poisonous tree, and is admissible in a subsequent proceeding.
Based on the foregoing, we reverse the district court’s order dismissing the case, and remand for further proceedings.
Agosti and Becker, JJ., concur.