129 Nev., Advance Opinion 51

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA,<br>Appellant,<br>vs.<br>KENT JOSEPH BECKMAN,<br>Respondent. | No. 57928<br><br>**FILED**<br><br>JUL 1 1 2013<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY_____<br>DEPUTY CLERK |

Appeal from a district court order granting a motion to suppress evidence. Fourth Judicial District Court, Elko County; J. Michael Memeo, Judge.

*Affirmed.*

Catherine Cortez Masto, Attorney General, Carson City; Mark Torvinen, District Attorney, and Robert J. Lowe, Deputy District Attorney, Elko County,
for Appellant.

Frederick B. Lee, Jr., Public Defender, and Alina M. Kilpatrick and Andrew M. Mierins, Deputy Public Defenders, Elko County,
for Respondent.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, PICKERING, C.J.:

Respondent Kent Beckman was stopped for speeding. The highway patrol officer verified Beckman's license and registration, told him "everything checks good," and issued a warning. As Beckman began

[1]This matter was transferred from panel to en banc following oral argument pursuant to IOP Rule 13(b).

to leave, the officer ordered him to remain until a drug-sniffing dog and handler team could arrive. When the dog arrived, it alerted for the presence of drugs, which was confirmed by the warrantless search that followed. Beckman was arrested and charged with trafficking, possession for sale, and possession of Schedule I and II controlled substances.

Beckman moved to suppress the evidence of contraband because the highway patrol officer unreasonably prolonged the traffic stop, unlawfully "seizing" him, and because exigent circumstances did not justify the warrantless search. The district court granted the motion based on the warrantless search. Because the seizure presents a threshold issue that requires affirmance as a matter of law irrespective of the warrantless search analysis, we focus on it. *See Picetti v. State*, 124 Nev. 782, 790, 192 P.3d 704, 709 (2008) (district court decision will be affirmed on appeal where court reached correct result).

A traffic stop that is legitimate when initiated becomes illegitimate when the officer detains the car and driver beyond the time required to process the traffic offense, unless the extended detention is consensual, de minimis, or justified by a reasonable articulable suspicion of criminal activity. The prolonged stop in this case met none of these exceptions and violated the United States and Nevada Constitutions. The constitutional violation warrants exclusion of the subsequently discovered evidence.

I.

The essential facts of this case were recorded by videotape and are not disputed. At 7:10 a.m. on a Sunday morning, Trooper Richard Pickers of the Nevada Highway Patrol stopped Beckman on Interstate 80

in Elko, Nevada, for speeding.[2] Trooper Pickers asked for Beckman's license and registration, which Beckman produced. Trooper Pickers questioned Beckman about his travels, and Beckman answered that he had been driving since 10 p.m. and was on his way to Omaha, Nebraska, to visit his son. At 7:13 a.m., Trooper Pickers told Beckman that he would verify Beckman's documents and issue a warning.

When Trooper Pickers returned to his patrol car, he told his passenger, a new dispatch employee in training, that he suspected criminal activity because of fingerprints on the trunk of Beckman's car. He added that Beckman seemed "overly nervous" and that he, Trooper Pickers, would not drive continuously through the night. When Trooper Pickers radioed dispatch to check Beckman's documents, he asked dispatch to send a drug-sniffing dog/handler team to the scene of the stop.

At 7:18 a.m., Beckman asked for permission to get out of his car to stretch. Trooper Pickers assented and in turn asked for permission to pat Beckman down for weapons. Beckman consented. Beckman and Trooper Pickers then engaged in friendly conversation, largely about Beckman's job as a wine salesperson. A minute later, Trooper Pickers returned Beckman's license and registration and told him "everything checks good . . . be careful." Beckman handed Trooper Pickers a business card and walked back toward his vehicle to leave.

Pickers then asked if he could ask Beckman "a couple of questions," to which Beckman responded "yes, sir." Trooper Pickers asked if Beckman had anything illegal in his car and if he could perform a

---

[2]There are two additional cases before this court that involve similar stops by Trooper Pickers—*State v. Lloyd* (Docket No. 56706), and *Tucker v. State* (Docket No. 58690).

SUPREME COURT
OF
NEVADA

(O) 1947A

vehicle search. Beckman denied having anything illegal but refused consent to the search. At this point, approximately 7:21 a.m., Trooper Pickers told Beckman that he was no longer free to leave and would have to wait for the canine unit to arrive and perform a sniff search. A minute later, Trooper Pickers gave Beckman a modified version of his *Miranda* rights.[3] While waiting for the canine unit, Trooper Pickers and Beckman continued to talk.

Officer Lowry and his drug-sniffing dog, Duchess, arrived at 7:29 a.m. Two minutes later, Duchess signaled the presence of drugs near the driver's side door of Beckman's vehicle. Trooper Pickers informed dispatch that the dog alerted positively, and he would perform a vehicle search. Trooper Pickers then began a search of the vehicle, and found what he determined to be cocaine in the center console. Thereafter, at 7:40 a.m., Trooper Pickers informed Beckman that he was under arrest, placed him in handcuffs, and secured him in the back of the patrol vehicle.

An additional officer arrived as backup, followed by a tow truck at 8:02 a.m. The three officers, with the tow truck driver's assistance, continued the search until 8:58 a.m. and found additional quantities of cocaine, as well as methamphetamine. During the search, Trooper Pickers was asked about a cut on his hand, and he responded, "That's me getting jazzed up. I don't even feel it. I'm on the search. I'm feeling like there's going to be more." After the search ended, Trooper Pickers drove Beckman to the sheriff's station.

The State charged Beckman with several drug-related offenses. Beckman filed a motion to suppress in which he argued that

---

[3]Trooper Pickers did not read the warning from a card. Instead, he explained the rights in approximate terms.

Trooper Pickers unlawfully seized him by unnecessarily extending the stop and that the officers further violated his rights by performing a warrantless search. In opposition to the motion, the State argued that Trooper Pickers had reasonable suspicion for the de minimus continued detention and that extenuating circumstances justified the warrantless search. After an evidentiary hearing, the district court granted the motion in a detailed order focusing on the legality of the warrantless search. The State appeals.

## II.

"Suppression issues present mixed questions of law and fact." *Johnson v. State*, 118 Nev. 787, 794, 59 P.3d 450, 455 (2002), *overruled on other grounds by Nunnery v. State*, 127 Nev. ___, ___, 263 P.3d 235, 250-51 (2011). This court reviews findings of fact for clear error, but the legal consequences of those facts involve questions of law that we review de novo. *Cortes v. State*, 127 Nev. ___, ___, 260 P.3d 184, 187 (2011); *State v. Lisenbee*, 116 Nev. 1124, 1127, 13 P.3d 947, 949 (2000). The reasonableness of a seizure is a matter of law reviewed de novo. *Id.*; *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008).

### A.

#### 1.

Using virtually identical words, the United States and Nevada Constitutions both guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see* Nev. Const. art. 1, § 18; *Cortes*, 127 Nev. at ___, 260 P.3d at 190-91. Temporary detention of individuals during a traffic stop constitutes a "seizure" of "persons" within the meaning of these constitutional provisions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *see Cortes*, 127 Nev. at ___, ___ n.7, 260 P.3d at

SUPREME COURT
OF
NEVADA

(O) 1947A

5

188-89, 191 n.7. "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren*, 517 U.S. at 810. Trooper Pickers had probable cause to believe that Beckman had violated a traffic law by driving 72 miles per hour in a 65-mile-per-hour zone. Thus, the initial stop was reasonable. *Id.* ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

During the course of a lawful traffic stop, officers may complete a number of routine tasks. For example, they may ask for a driver's license and vehicle registration, run a computer check, and issue a ticket. *See United States v. Vaughan*, 700 F.3d 705, 710 (4th Cir. 2012). Officers may also inquire about the occupants' destination, route, and purpose. *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005). And if necessary, law enforcement may conduct a brief, limited investigation for safety purposes. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Dixon v. State*, 103 Nev. 272, 273, 737 P.2d 1162, 1163-64 (1987).

Here, Trooper Pickers correctly tailored the initial investigation to the circumstances justifying the stop. *See* 68 Am. Jur. 2d *Searches and Seizures* § 90 (2010) ("[T]he scope of the detention must be carefully tailored to its underlying justification."). As with most traffic stops, Trooper Pickers asked for Beckman's driver's license and vehicle registration, which he had dispatch check by computer search. Although Trooper Pickers asked Beckman questions about his travels, this inquiry was within the scope of the lawful traffic stop and did not improperly extend the duration of that stop. Thus, the first phase of Trooper Pickers'

investigation, which lasted from approximately 7:10 to 7:19, satisfied the Fourth Amendment's requirement of reasonableness.

### 2.

But a "seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); *see also Florida v. Jardines*, 569 U.S. ___, ___, 133 S. Ct. 1409, 1416 (2013) (explaining that the scope of an officer's investigation is limited by the purpose of the investigation). In *Caballes*, a police officer stopped Caballes for speeding, and one of the officer's colleagues on the canine unit immediately headed for the scene. *Id.* at 406. A few minutes later, while the officer was still writing out a warning ticket, the dog and handler walked around Caballes's car, where the dog alerted to the presence of drugs. After Caballes challenged the constitutionality of the sniff, the Court explained that a dog sniff during a *lawful* traffic stop does not violate the Constitution so long as the sniff does not prolong the length of the stop. *Id.* at 408-09 (emphasis added). The Court continued that the inverse is also true—if a traffic stop is unreasonably prolonged before a canine is employed, the use of the canine and subsequently discovered evidence are products of an unconstitutional seizure. *Id.* at 407-08. Because the canine unit in *Caballes* arrived while the initial officer was still processing the initial reason for the stop, the canine sniff did not run afoul of the Constitution.

Similarly, in *Gama v. State*, 112 Nev. 833, 837-38, 920 P.2d 1010, 1013 (1996), this court upheld a dog sniff that occurred during a traffic stop. There, police initiated the stop because Gama was speeding and nearly rear-ended another vehicle. *Id.* at 835, 920 P.2d at 1012. A narcotics unit arrived with a drug-sniffing dog before the officer completed

a written citation. *Id.* at 837-38, 920 P.2d at 1013. Since the sniff did not extend the length of the traffic stop, we held that Gama had not been unlawfully seized. *Id.* at 838, 920 P.2d at 1013-14.

Here, unlike the officers in *Caballes* and *Gama*, Trooper Pickers extended the length of the traffic stop to await a canine unit.[4] The initial stop for the speeding violation ended around 7:19 a.m. when Trooper Pickers informed Beckman "everything checks [out]" and both parties started walking toward their cars. After Beckman consensually answered a few questions regarding controlled substances, Trooper Pickers seized Beckman again by informing Beckman that he was no longer free to leave and would need to wait for the canine unit to arrive and perform a sniff search. Trooper Pickers also read Beckman his *Miranda* rights. This show of authority restrained Beckman's liberty, *Terry*, 392 U.S. at 19 n.16 (explaining that when an officer uses his authority to detain a citizen, a seizure has occurred), and in view of these circumstances, a reasonable person in Beckman's position would believe that he was not free to leave. *See State v. Stinnett*, 104 Nev. 398, 401, 760 P.2d 124, 127 (1988) (citing *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)) (explaining that a person is seized if he does not believe he is free to leave). The question then becomes whether the prolonged traffic stop was reasonable under the Fourth Amendment.

### B.

"[A] traffic stop [that] extends beyond the time necessary to effectuate its purpose does not necessarily render it unreasonable."

---

[4]Per the State, "There is going to be a little bit of time when you're going to have to get the dog out there, especially in a large county like Elko."

*United States v. Bueno*, 703 F.3d 1053, 1060 (7th Cir.), *vacated as to codefendant's sentencing determination sub nom. Gonzalez-Zavala v. United States*, 569 U.S. ___, ___ S. Ct. ___, 81 U.S.L.W. 3689 (2013). A prolonged stop may be reasonable in three limited circumstances: when the extension of the stop was consensual, the delay was de minimis, or the officer lawfully receives information during the traffic stop that creates a reasonable suspicion of criminal conduct. *Id.* at 1060-62. "The ultimate determination of reasonableness . . . is a question of law reviewable de novo." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006); *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) ("[w]hether a seizure is reasonable under the Fourth Amendment is a question of law that we review de novo.").

First, a prolonged traffic stop is not unreasonable if the encounter becomes consensual. After all, a consensual encounter is not a seizure, and thus, the Fourth Amendment is not implicated. *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010); *see also United States v. Figueroa-Espana*, 511 F.3d 696, 702 (7th Cir. 2007). Here, Beckman consensually responded to Trooper Pickers' initial questions about contraband from 7:20 until 7:21, but if consent existed, it vanished around 7:21 when Beckman asked, "can I please go," and Trooper Pickers responded, "absolutely not." The continued detention therefore cannot be justified based on consent.

Second, a modest delay may be reasonable, depending on the circumstances surrounding the stop. For example, other jurisdictions have permitted a two-minute delay, *United States v. McBride*, 635 F.3d 879, 883 (7th Cir. 2011); *United States v. Chaney*, 584 F.3d 20, 26 (1st Cir. 2009), and a four-minute delay, *United States v. Alexander*, 448 F.3d 1014,

SUPREME COURT
OF
NEVADA

(O) 1947A

9

1017 (8th Cir. 2006), as de minimis intrusions on a driver's liberty. Here, the State argued during oral argument that the continued detention was de minimus and "not a very long period out of Mr. Beckman's life." It further stated that the "obvious seizure" did not unreasonably extend the stop because Trooper Pickers "throughout the whole period act[ed] expeditiously to get the dog there." We disagree. The delay was not de minimis because Trooper Pickers detained Beckman for an additional nine minutes, doubling the length of the stop. Accordingly, the additional delay was not permissible as de minimus.

Third, a prolonged stop is permissible if the results of the initial stop provide an officer with reasonable suspicion of criminal conduct, thereby creating a new Fourth Amendment event. *See, e.g.*, *State v. Perez*, 435 A.2d 334, 338 (Conn. 1980) (when "a police officer's suspicions upon a lawful stop are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances"), *overruled on other grounds by State v. Altrui*, 448 A.2d 837, 846 n.6 (1982); *Estrada v. Rhode Island*, 594 F.3d 56, 64 (1st Cir. 2010) (recognizing that information gathered during a traffic stop may provide reasonable suspicion of criminal conduct that will justify extending the stop). Whether the officer's articulated reasons for extending the seizure were reasonable "must be determined with an objective eye in light of the totality of the circumstances." *Lisenbee*, 116 Nev. at 1128, 13 P.3d at 950.

Here, the State contended that the continued detention was justified by the suspicions that Trooper Pickers related, to wit: Beckman's nervousness, the handprints on the car's trunk lid, and Beckman's request to get out of his vehicle and stretch. But these are all occurrences Trooper Pickers observed *before* he decided to issue a warning and send Beckman

on his way. The only noteworthy event that occurred *after* Trooper Pickers released Beckman was Beckman's offer of a business card.

Although an officer's training and experiences enable him to draw inferences that "might well elude an untrained person," *United States v. Cortez*, 449 U.S. 411, 418 (1981), the totality of the circumstances here would not cause a prudent person to have an honest or strong suspicion that Beckman had committed a crime. *Deutscher v. State*, 95 Nev. 669, 681, 601 P.2d 407, 415 (1979). Factors such as nervousness are part of a reasonable suspicion analysis but, standing alone, carry little weight because many citizens become nervous during a traffic stop, even when they have nothing to hide. *United States v. Arvizu*, 534 U.S. 266, 275 (2002); *United States v. Richardson*, 385 F.3d 625, 630-31 (6th Cir. 2004). Jurisdictions are divided on the value of handprints on a vehicle. Some have recognized reasonable suspicion where handprints were one of many factors, *e.g.*, *United States v. Thompson*, 408 F.3d 994, 995-96 (8th Cir. 2005), but others have not. *United States v. Salinas*, 940 F.2d 392, 394-95 (9th Cir. 1991) (finding no reasonable suspicion where officers observed handprints on the trunk of an automobile). Although criminals may frequently check contraband in their trunks, many law-abiding citizens also routinely utilize their trunks for non-suspect reasons, such as hauling groceries (or in Beckman's case, wine). Next, even if Beckman's request to stand and stretch was unusual compared to other citizens, it made sense given the fact that Beckman had been driving for hours. And when Beckman sought to exit his vehicle, he requested permission from, and fully cooperated with, Trooper Pickers. Lastly, the business card made sense given that Beckman is a salesperson, and if anything, would likely have tended to make a reasonable person think that Beckman had

SUPREME COURT
OF
NEVADA

(O) 1947A

11

nothing to hide. Thus, the events that occurred during the traffic stop did not provide reasonable suspicion of criminal activity that made the continued detention reasonable.

For these reasons we conclude as a matter of law that Trooper Pickers unreasonably seized Beckman's person in violation of the United States and Nevada Constitutions before the canine sniff and warrantless search ever occurred. Although law enforcement does not need reasonable suspicion before conducting a dog sniff, *United States v. Place*, 462 U.S. 696, 707 (1983) (concluding that a dog sniff is not a "search" for purposes of the Fourth Amendment), the sniff was the "product of an unconstitutional seizure" during a "traffic stop [that was] unreasonably prolonged before the dog [wa]s deployed." *Alexander*, 448 F.3d at 1016 (8th Cir. 2006); *see also* 4 Wayne R. LaFave, *Treatise on Search and Seizure* § 9.3(b) (5th ed. 2012) ("A traffic stop that has been turned into a drug investigation via . . . questioning about drugs, grilling about the minute details of travel plans, seeking consent for a full roadside exploration of the motorist's car, or parading a drug dog around the vehicle[ ] is a far cry from a straightforward and unadorned traffic stop . . . ."). And when the extended seizure "enable[s] the dog sniff to occur,'" suppression may properly follow. *United States v. Peralez*, 526 F.3d 1115, 1121 (8th Cir. 2008) (quoting *Caballes*, 543 U.S. at 408).

III.

In these circumstances suppression is appropriate because Trooper Pickers' conduct raises "'concern[s] about the inclination of the Government toward using whatever facts are present, no matter how innocent, as indicia of suspicious activity.'" *United States v. Digiovanni*, 650 F.3d 498, 512 (4th Cir. 2011) (quoting *United States v. Foster*, 634

Supreme Court
of
Nevada

(O) 1947A

12

F.3d 243, 248 (4th Cir. 2011)).[5]  Suppression is not only appropriate because the extended seizure enabled the dog sniff, but also because of the continued seizure and intrusive search that Beckman endured.  Even though the subsequent search revealed contraband in Beckman's vehicle, "'no subsequent events or circumstances can retroactively justify the seizure.'"  *Lisenbee*, 116 Nev. at 1129, 13 P.3d at 951 (quoting *State v. Stinnett*, 104 Nev. 398, 401, 760 P.2d 124, 126 (1988)).  And the government cannot benefit from evidence that officers obtained through a clear violation of an individual's Fourth Amendment rights.  *See Jardines*, 569 U.S. ___, ___, 133 S. Ct. 1409, 1417-18 (affirming suppression of evidence where officers gathered the evidence by intruding on an individual's Fourth Amendment rights); *Segura v. United States*, 468 U.S. 796, 815 (1984) (Suppression is justified when the challenged evidence is "'the product of illegal governmental activity.'" (quoting *United States v. Crews*, 445 U.S. 463, 471 (1980))).

Accordingly, the district court appropriately suppressed the evidence.  Although the court based its decision on the warrantless search, its conclusion is far more compelling based on the illegal seizure.  Unlike the warrantless search that the district court addressed, which involves complex areas of law, the law prohibiting illegal seizures is plain and easily understood.  There is no justification for the unconstitutional

---

[5]Our concerns are further heightened by the State's candid disclosure that "Trooper Pickers made statements that were misleading and or dishonest in his application" to an agency in Idaho. The dishonesty was severe enough "that [it] would have been enough to result in his termination" had he not left the police force on his own accord.

seizure and its aftermath, including the search that ultimately yielded contraband.

We therefore affirm.

_____ , C.J.
Pickering

We concur:

_____ , J.
Gibbons

_____ , J.
Hardesty

_____ , J.
Parraguirre

_____ , J.
Douglas

_____ , J.
Cherry

_____ , J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A