131 Nev., Advance Opinion 2

IN THE SUPREME COURT OF THE STATE OF NEVADA

RALPH TORRES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61946

FILED

JAN 29 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a guilty plea, of ex-felon in possession of a firearm. Fourth Judicial District Court, Elko County; Nancy L. Porter, Judge.

*Reversed and remanded.*

Frederick B. Lee, Jr., Public Defender, and Alina M. Kilpatrick, Deputy Public Defender, Elko County,
for Appellant.

Adam Paul Laxalt
Catherine Cortez Masto, Attorney General, Carson City; Mark Torvinen, District Attorney, and Mark S. Mills, Deputy District Attorney, Elko County,
for Respondent.

BEFORE THE COURT EN BANC.

OPINION

By the Court, HARDESTY, J.:

In this appeal, we determine whether the discovery of a valid arrest warrant purges the taint from the illegal seizure of a pedestrian, such that the evidence obtained during a search incident to the arrest is admissible. We conclude that the officer's continued detention of Ralph

SUPREME COURT
OF
NEVADA

(O) 1947A

3/12/15: Corrected per letter to publishers. CJ

15-03102

Torres, after he dispelled any suspicion that Torres was committing a crime, constituted an illegal seizure in violation of the Fourth Amendment and the fruits of that illegal seizure should have been suppressed. Therefore, we reverse the judgment of conviction.

## FACTS

In February 2008, Officer Shelley observed a smaller male wearing a sweatshirt with the hood pulled over his head sway and stagger as he walked over a bridge in Elko, Nevada. Officer Shelley thought that the man might be intoxicated and too young to be out past curfew. He then parked his patrol car in a store parking lot at the end of the bridge and addressed Torres as he walked in that direction. Officer Shelley told Torres that he stopped him because he was concerned that Torres was too young to be out after curfew and that it appeared he had been drinking. He asked Torres for identification.

Torres gave Officer Shelley his California identification card (ID card), which revealed that Torres was over the age of 21, and thus, old enough to be out past curfew and consuming alcohol. After reading Torres's ID card, Officer Shelley retained the ID card as he recited Torres's information to police dispatch for verification and to check for outstanding arrest warrants. According to Officer Shelley, it is his standard practice to verify the identification information of every person he encounters because police officers are often given fake identification cards that contain inaccurate information. However, nothing in Officer Shelley's testimony indicated that anything about Torres's ID card seemed fake or inaccurate. Although Officer Shelley could not remember when he handed Torres his ID card back after reciting the information to dispatch,

he stated that it is also his standard practice to keep an identification card in his possession until after he gets a response from dispatch.

Within five minutes of transmitting Torres's information to dispatch, Officer Shelley was informed that Torres had two outstanding arrest warrants from California. A second patrol officer arrived and, upon confirmation from dispatch that one of the warrants was extraditable, Officer Shelley took Torres into custody. After taking Torres into custody, Officer Shelley went to conduct a search incident to arrest, at which point Torres told him that he had a gun in his pocket. Officer Shelley then handcuffed Torres, removed a .22 caliber gun from his pocket, and located .22 ammunition in another pocket.

Torres was charged with being an ex-felon in possession of a firearm, receiving or possessing stolen goods, and carrying a concealed weapon. Torres filed a motion to suppress the handgun evidence and to ultimately dismiss the charges. Torres argued that his detention after Officer Shelley confirmed that he was not in violation of curfew was unconstitutional because Officer Shelley did not have suspicion that any other crime was occurring and Torres did not consent to the interaction. Therefore, once Officer Shelley knew Torres was of age, the encounter evolved into an illegal seizure that resulted in the discovery of the firearm. Torres also contended that the discovery of the warrant was not an intervening circumstance sufficient to purge the taint of the discovery of the handgun from the illegal seizure.

In response, the State argued that Officer Shelley had reasonable suspicion to detain Torres because of his stature, the time of day, and his apparent drunkenness, and that Torres consented to the encounter. The State further contended that the discovery of the warrant

was an intervening circumstance sufficient to purge the taint of the possibly illegal seizure from the discovery of the handgun, and, therefore, the handgun evidence was not the fruit of an illegal seizure.

The district court denied Torres's motion to suppress because it determined that the initial contact between Officer Shelley and Torres was consensual. However, the district court did not make a determination about whether the consensual encounter became an illegal seizure. Instead, the district court determined the warrant to be an intervening circumstance and found that "the legality, or illegality, of Officer Shelley's decision to run a warrants check on [Torres] to be irrelevant to the legality of [Torres's] arrest." The court found the question irrelevant because the warrant would have been an "intervening circumstance" sufficient to purge the illegality of the seizure if the stop had become illegal. Upon the district court's denial of Torres's motion to suppress, Torres pleaded guilty to being an ex-felon in possession of a firearm pursuant to NRS 202.360(1)(a).[1] This appeal followed.

## DISCUSSION

In this appeal, we consider whether the judgment of conviction must be reversed based on Torres's Fourth Amendment challenge and the district court's denial of his motion to suppress.[2] In reaching our

---

[1]In *Gallegos v. State*, we concluded that paragraph (b) of NRS 202.360(1) was unconstitutionally vague. 123 Nev. 289, 163 P.3d 456 (2007). This holding does not affect the paragraph at issue here, paragraph (a) of NRS 202.360(1), or our analysis of the issues in this appeal.

[2]Torres reserved the right to challenge the denial of his motion to suppress on appeal. *See* NRS 174.035(3).

conclusion, we first determine whether Officer Shelley's continued detention of Torres constituted an illegal seizure. If so, we must decide whether the discovery of Torres's valid arrest warrant attenuated the taint from the illegal seizure, such that the firearm evidence obtained during a search incident to arrest was admissible.

*Officer Shelley's continued detention of Torres resulted in an illegal seizure in violation of the Fourth Amendment*

In Fourth Amendment challenges, this court reviews the district court's findings of fact for clear error but reviews legal determinations de novo. *Somee v. State*, 124 Nev. 434, 441, 187 P.3d 152, 157-58 (2008). Police encounters can be consensual. *See United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Id.* at 554. However, if a reasonable person would not feel free to leave, he or she has been "'seized' within the meaning of the Fourth Amendment." *Id.*

If a person does not consent, "a police officer may [still] stop a person and conduct a brief investigation when the officer has a reasonable, articulable suspicion that criminal activity is taking place or is about to take place." *State v. Lisenbee*, 116 Nev. 1124, 1127, 13 P.3d 947, 949 (2000); *see also* NRS 171.123(1); *Terry v. Ohio*, 392 U.S. 1, 27 (1968). To conduct an investigative stop, an officer must have more than an "'inchoate and unparticularized suspicion or "hunch"'" that criminal activity is occurring; the officer must have "some objective justification for detaining a person." *Lisenbee*, 116 Nev. at 1128, 13 P.3d at 949 (quoting *Terry*, 392 U.S. at 27).

"But a 'seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.'" *State v. Beckman*, 129 Nev. ___, ___, 305 P.3d 912, 916-17 (2013) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). For an investigative stop to be reasonable, it "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). "[An individual] may not be detained *even momentarily* without reasonable, objective grounds for doing so . . . ." *Id.* at 498 (emphasis added).

"[T]he nature of the police-citizen encounter can change—what may begin as a consensual encounter may change to an investigative detention if the police conduct changes and vice versa." *United States v. Zapata*, 997 F.2d 751, 756 n.3 (10th Cir. 1993). A consensual encounter is transformed into a seizure in violation of the Fourth Amendment "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 215 (1984).

In *Lisenbee*, we considered such a transformation and determined the defendant was not "free to leave." 116 Nev. at 1128-30, 13 P.3d at 950-51. There, we concluded that after the defendant produced identification demonstrating he was not the possible suspect police were looking for, NRS 171.123(4) prevented further detention by police.[3] *Id.* Accordingly, the defendant's further detention was unreasonable and

___

[3]NRS 171.123(4) states in part that "[a] person must not be detained longer than is reasonably necessary to effect the purposes of this section [(temporary detention by peace officer of person suspected of criminal behavior)]."

Supreme Court
OF
Nevada

(O) 1947A

6

resulted in an illegal seizure. *Id.* *See also United States v. Lopez*, 443 F.3d 1280, 1285-86 (10th Cir. 2006) (holding that the officer's retention of the defendant's identification transformed a consensual encounter into an unconstitutional seizure because the officer's reasonable suspicion for the encounter was cured "[w]ithin seconds of reviewing [the defendant's] license," and, given the totality of the circumstances, the defendant would not have felt free to leave); *State v. Westover*, 10 N.E.3d 211, 219 (Ohio Ct. App. 2014) (concluding that "no reasonable person would [feel] free to terminate [an] encounter and go about their business, where an officer is holding that individual's identification and is using it to run a warrants check").

Veritably, scholars have noted the disagreement between other courts on whether a seizure has occurred for Fourth Amendment purposes when the police retain an individual's identification. *See* Aidan Taft Grano, Note, *Casual or Coercive? Retention of Identification in Police-Citizen Encounters*, 113 Colum. L. Rev. 1283 (2013) (highlighting the differences between the Fourth and the D.C. Circuit Courts regarding whether a consensual encounter can become a seizure solely through the retention of an individual's identification). In *United States v. Weaver*, the Fourth Circuit Court of Appeals held that an officer's retention of the defendant's identification beyond its intended purpose was not a seizure, as the defendant was a pedestrian, and, while "awkward," the defendant "could have walked away from the encounter [without his identification]." 282 F.3d 302, 311-12 (4th Cir. 2002). By contrast, in *United States v. Jordan*, the D.C. Circuit Court of Appeals held that a consensual encounter transformed into a seizure when officers retained the defendant's identification and continued questioning him, despite no

"articulable suspicion that would have made a brief *Terry*-style detention reasonable." 958 F.2d 1085, 1086-89 (D.C. Cir. 1992). Based on our previous holding in *Lisenbee*, and being mindful of NRS 171.123(4), we agree with the reasoning of the D.C. Circuit Court that generally a reasonable person would not feel free to leave when an officer retains a pedestrian's identification after the facts giving rise to articulable suspicion for the original stop have been satisfied.

Here, Officer Shelley testified that he stopped Torres because Officer Shelley thought Torres was a minor out past curfew and too young to be drinking. Once Torres produced his ID card verifying he was not a minor and over the age of 21, the suspicion for the original encounter was cured and Officer Shelley no longer had reasonable suspicion to detain Torres. But rather than release Torres, Officer Shelley continued to detain him, and contacted dispatch to check for warrants. The officer explained his further detention of Torres as his "standard practice" because he "very often get[s] fake I.D.'s, altered information on I.D.'s, I.D.'s that resemble the person but is not truly that person." However, there is no evidence to show that Torres's ID card was fake or altered in any way. Like *Lisenbee*, where a consensual encounter transformed into an illegal seizure, Officer Shelley retained Torres's ID card after the reasonable suspicion for the original stop eroded.[4] Nothing in the record provides a basis for Shelley's continued detention of Torres or offers a basis for us to conclude that a reasonable person in Torres's position was

---

[4]Because Torres was a pedestrian, we do not address the application of *Lisenbee* or NRS 171.123(4) to a traffic stop. *See, e.g., State v. Lloyd*, 129 Nev. ___, 312 P.3d 467 (2013) (discussing warrantless searches and the automobile exception).

free to leave. We conclude that under NRS 171.123(4), this continued detention of Torres transformed the investigative stop into an illegal seizure in violation of the Fourth Amendment. Because Torres was illegally seized, we must now examine whether the district court should have suppressed the firearm evidence Officer Shelley discovered in the search incident to arrest.

*The firearm evidence should have been suppressed because it was the fruit of an illegal seizure*

Generally, the exclusionary rule requires courts to exclude evidence that the police obtained in violation of the Fourth Amendment, thereby deterring any incentive for the police to disregard constitutional privileges. *See generally Mapp v. Ohio*, 367 U.S. 643, 656 (1961). Courts must also exclude evidence obtained after the constitutional violation as "indirect fruits of an illegal search or arrest." *New York v. Harris*, 495 U.S. 14, 19 (1990). However, not "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). The United States Supreme Court has found that when the constitutional violation is far enough removed from the acquisition of the evidence, the violation is sufficiently "'attenuated [so] as to dissipate the taint'" of the illegality and the evidence may be admitted. *Id.* at 491 (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). To be admissible, the police must acquire the evidence "by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 491 (internal quotations omitted) (excluding physical evidence because it was discovered "by the exploitation" of the illegality of the unlawful arrest, but not excluding statements made by the defendant several days after his

arrest because the causal connection had attenuated "the primary taint" (internal quotations omitted)).

To resolve the suppression issue, the State urges this court to either create a per se rule of attenuation or apply the factors from *Brown v. Illinois*, 422 U.S. 590 (1975), and determine that attenuation exists here. Torres argues that we should not adopt the three-factor test from *Brown* to analyze whether the presence of an outstanding arrest warrant purges the taint of evidence discovered during an illegal seizure. We agree with Torres.

In *Brown*, the police arrested the defendant without probable cause and without a warrant. *Id.* at 591. Thereafter, the police gave the defendant comprehensive *Miranda*[5] warnings, and he proceeded to make incriminating statements. *Id.* The question presented to the United States Supreme Court was whether the *Miranda* warnings sufficiently attenuated the illegal arrest from the incriminating statements, such that the incriminating statements were not the fruit of the illegal arrest and were thus admissible. *Id.* at 591-92. In performing its attenuation analysis, the Court refused to adopt a "per se" rule of attenuation or lack thereof when a Fourth Amendment violation preceded *Miranda* warnings and subsequent confessions. *Id.* at 603. Rather, the Court established a three-part test for determining whether the taint of the evidence is attenuated from illegal police conduct such that the confession would be admissible: "The temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct . . . ." *Id.* at 603-04 (internal

---

[5]*Miranda v. Arizona*, 384 U.S. 436 (1966).

citation and footnote omitted). One factor alone is not dispositive of attenuation. *Id.* Applying those factors and limiting its decision to the facts of the case before it, the Court concluded that the lower court erroneously assumed "that the *Miranda* warnings, by themselves, . . . always purge the taint of an illegal arrest." *Id.* at 605.

To be sure, the *Brown* factors are well suited to address the factual scenario of that case in determining "whether a confession is the product of a free will under *Wong Sun.*" *Id.* at 603-04. We do not perceive the *Brown* factors as particularly relevant when, as here, there was no demonstration of an act of free will by the defendant to purge the taint caused by an illegal seizure.[6] Accordingly, in the absence of reasonable suspicion, the discovery of an arrest warrant is not "sufficiently distinguishable to be purged of the primary taint" from an illegal seizure. *Wong Sun*, 371 U.S. at 488 (internal quotations omitted). Thus, we agree with the Ninth and Tenth Circuits, as well as the Supreme Court of Tennessee, that without reasonable suspicion, the discovery of arrest warrants cannot purge the taint from an illegal seizure. *See Lopez*, 443 F.3d 1280; *United States v. Luckett*, 484 F.2d 89 (9th Cir. 1973); *State v. Daniel*, 12 S.W.3d 420 (Tenn. 2000).

---

[6]Some courts have considered the *Brown* factors when the "intervening circumstance" is the discovery of an arrest warrant, but these cases do not adequately address the difference between an intervening circumstance caused by a defendant's act of free will to purge the primary taint and the absence of a defendant's free will resulting from an illegal seizure. *See, e.g., United States v. Green*, 111 F.3d 515, 521-23 (7th Cir. 1997); *Golphin v. State*, 945 So. 2d 1174, 1191-93 (Fla. 2006); *People v. Mitchell*, 824 N.E.2d 642, 649-50 (Ill. App. Ct. 2005).

We conclude that the further detention of Torres was not consensual at the time of the warrants check, and thus Torres was illegally seized. The officer retained Torres's ID card longer than necessary to confirm Torres's age, rendering Torres unable to leave. Because the officer did not have reasonable suspicion necessary to justify the seizure under NRS 171.123(4), the evidence discovered as a result of the illegal seizure must be suppressed as "fruit of the poisonous tree" since no intervening circumstance purged the taint of the illegal seizure. Therefore, we conclude that the district court in this case should have suppressed the evidence of the firearm discovered on Torres's person after the investigative stop transformed into an illegal seizure.

For the reasons set forth above, we reverse the judgment of conviction and remand this matter to the district court to allow Torres to withdraw his guilty plea.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering